# In the United States Court of Federal Claims

No. 16-76C

(Filed: September 21, 2016)

```
*********************************** *
                                    *
HAROLD C. MARCHENA,                 *
                                    *
                 Plaintiff,         *
                                    *    Breach   of   Contract;   Actual
                                    *    Authority of Government Agents;
v.                                  *    Motion to Dismiss; Rule 15(a)(2)
                                    *    Motion to Amend
THE UNITED STATES,                  *
                                    *
                 Defendant.         *
                                    *
*********************************** *
```

*Kenneth F. McCallion*, McCallion & Associates LLP, New York, N.Y., for Plaintiff.

*Anthony F. Schiavetti*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

Plaintiff, a Government informant named Harold C. Marchena, claims that the Government breached a contract with him when it failed to help him secure money from a large asset forfeiture in a criminal case. Marchena argues that agents working on behalf of the Government promised him that they would use best efforts to help him secure the money in return for his assistance in procuring the testimony of several acquaintances, but that the Government has refused to pay even though Marchena performed.

The Government moved to dismiss Marchena's original complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Court of Federal Claims ("RCFC") on May 13, 2016. Marchena filed his opposition to the Government's motion on July 22, 2016, and cross-moved to amend his complaint pursuant to RCFC 15(a)(2) in the same filing. The

Government opposed Marchena's motion to amend on August 18, 2016, in its reply in support of its motion to dismiss.[1]  The Court heard oral argument on the parties' respective motions on September 12, 2016.  After reviewing the parties' arguments in court and in their filings, the Court concludes that Marchena's proposed amendments would be futile. Plaintiff's motion to amend is therefore DENIED, and Defendant's motion to dismiss is GRANTED.

Background[2]

Marchena filed this action to recover $106,250 for his efforts in an illegal gambling and racketeering case brought against José Miguel Battle, Sr.  Prop. Am Compl. ¶¶ 4, 7–10.  Battle was the leader of a Cuban criminal organization called "La Corporacion," and a casino he owned in Peru employed Marchena from approximately September 1, 1993 to November 14, 1994.  Id. ¶¶ 4, 9.  When Marchena stopped working at the casino, he was owed $106,250 in back wages.  Id. ¶ 10.  He has not been able to collect these wages even after obtaining a judgment for them in 1996 in Peru.  Id.

In 2001, Marchena met with Detective David Shanks of the Metro-Dade Police Department and Agent Robert O'Bannon of the United States Department of State.  Id. ¶¶ 12–13.  Shanks and O'Bannon asked for Marchena's help in the Battle investigation. Id. ¶ 13.   They also told Marchena that they would use their best efforts to "obtain/recommend/support" an award to Marchena from any asset seizure in the Battle case if Marchena helped in the investigation.  Id. ¶ 16.  Marchena alleges that Shanks and O'Bannon "had apparent and actual authority" to enter into this agreement on the Government's behalf.  Id.   After this, Marchena hired an attorney who "verbally confirm[ed]/witness[ed]" the agreement with Shanks and O'Bannon.  Id. ¶ 18.  Marchena alleges that Shanks and O'Bannon's "superiors and other Government agents," including an Assistant United States Attorney, Gonzalez, "with the actual authority to bind the Government," ratified the agreement with Marchena.  Id. ¶ 19.

Marchena performed as promised.  He gave Shanks and O'Bannon information and introduced them to three other witnesses.  Id. ¶ 20.  Marchena also convinced several witnesses to speak to Shanks and O'Bannon.  Id. ¶¶ 21–23.  Two of these witnesses testified in front of the Grand Jury in the Battle case.  Id. ¶ 27.

---

[1] These filings are referred to herein respectively as "Mot.," "Cross Mot.," and "Reply," and may be found at Docket Numbers 7, 10, and 13.  Additionally, Plaintiff's Proposed Amended Complaint (Dkt. No. 10 Ex. 1) is referred to herein as "Prop. Am. Compl."

[2] The Court draws the facts as stated in the Background section of this Opinion from the Proposed Amended Complaint.  For the purposes of the pending motions, these facts are assumed to be true.

In June 2002, Marchena agreed to forgo filing a lien against the assets in the Battle case until after the Battle defendants were indicted.  Id. ¶ 25.  Shanks, on behalf of AUSA Gonzalez, continued to assure Marchena that they would use best efforts to obtain an award for him from any eventually forfeited assets in the Battle case.  Id.  The Government also provided no security or protection for Marchena and his family during or after trial, despite having told Marchena that it would do so.  Id. ¶ 28.  Battle pled guilty during his trial, and other members of his organization were convicted in a jury trial on July 25, 2006.  Id. ¶ 8.  The court in that case entered a final forfeiture order on January 13, 2010, in the amount of $1.4 billion against Battle and $642 million against Battle's son.  Id.

After the trial, Shanks told Marchena to file a lien in the Battle case to ensure Marchena would be paid.  Id. ¶ 30.  The court in that case denied Marchena's lien because Marchena was not a qualified lien holder.  Id. ¶ 31.  Marchena and Shanks then got into a dispute over involving Marchena's then-attorney, Spittler, in further attempts to obtain Marchena's money from the Government.  Id. ¶¶ 33–34.  Shanks told Marchena that if he brought Spittler into the case once again, Shanks would ensure that Marchena would never be paid.  Id. ¶ 34.  Marchena nevertheless did so, and Spittler filed a petition for restitution on Marchena's behalf with the United States Attorney General's Office on December 12, 2010.  Id. ¶ 35.  The Attorney General's Office denied the petition on May 8, 2013, because Marchena was not a "victim of the crime nor a recognized lienholder, because he did not file and record his foreign judgment and file a lien before the Government's indictment and seizure . . . ."  Id. ¶ 38.  Thus, Marchena was left with no compensation for his efforts as an informant.

Marchena filed this action on January 13, 2016, alleging that the Government breached either an express or implied-in-fact contract with him under which the Government promised to use best efforts to help Marchena recover his money.  See Compl., Dkt. No. 1.  The Government then moved to dismiss this case under RCFC 12(b)(1) and 12(b)(6), mainly on the grounds that Marchena did not sufficiently allege the existence of a contract with the United States.  See Mot., Dkt. No. 7.  Marchena moved to amend his complaint pursuant to RCFC 15(a)(2).  See Cross Mot., Dkt. No. 10.  In his Proposed Amended Complaint, Marchena fills out his contract allegations, deletes his plea for declaratory relief, and adds allegations that the Government breached a further agreement to provide Marchena and his family with protection during the Battle investigation.  See Prop. Am. Compl., Dkt. No. 10 Ex. 1.  In its reply in support of its motion to dismiss, the Government opposes Marchena's motion to amend, asserting largely the same arguments under RCFC 12(b)(1) and 12(b)(6) that it raised in its original motion.  See Reply, Dkt. No. 13.

Discussion

Plaintiff's Motion to Amend the Complaint

A party may amend its complaint under RCFC Rule 15(a)(2) with the Court's leave, which should be given "freely . . . when justice so requires." Courts construe this language liberally, and generally grant leave to amend barring any "apparent or declared reason" not to permit amendment. A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1158 (Fed. Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). The Court should deny leave to amend if there is evidence of delay, bad faith, repeated failure to correct a complaint's deficiencies, undue prejudice to the opposing party, or if the amendment would be futile. Id.

Here, there is no evidence of bad faith or undue delay by Marchena, and this is Marchena's first request to amend his complaint. Further, the Government does not argue that it would be unduly prejudiced if Marchena were granted leave to amend his complaint. Indeed, the amendments Marchena proposes merely serve to add details to factual allegations in the original complaint. Instead, the Government argues that Marchena should not be granted leave to amend because Marchena's proposed amendments would be futile. Therefore, this Court's analysis will focus entirely on whether Marchena's proposed amendments would be futile.

A proposed amendment is futile if it would not survive a motion to dismiss. Meyer Grp., Ltd. v. United States, 115 Fed. Cl. 645, 650 (2014). Accordingly, "the party seeking leave must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." Id. (quoting Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1354–55 (Fed. Cir. 2006)) (internal punctuation omitted). Here, the Government argues that the amendment would be futile because it would not survive a motion to dismiss brought under RCFC 12(b)(1) and 12(b)(6). Specifically, the Government argues (1) that Marchena has not alleged the existence of a contract with the United States, so this Court lacks subject matter jurisdiction; (2) that the statute of limitations has run on Marchena's claims; and (3) that the amended complaint fails to state at claim upon which relief can be granted because Marchena has not sufficiently alleged the existence of a contract with the United States. The Court will examine each of the Government's arguments in turn.

I.    The Court Only has Subject-Matter Jurisdiction Over Marchena's Contract Claims

    A.  Standard of Review

The Government first argues that this Court lacks subject matter jurisdiction over this case.  Therefore, the Court's analysis of the Government's jurisdictional argument is substantially the same as it would be for a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1).  When considering a motion to dismiss under RCFC 12(b)(1), the Court must "assume all factual allegations to be true and . . . draw all reasonable inferences in plaintiff's favor."  Wurst v. United States, 111 Fed. Cl. 683, 685 (2013) (quoting Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).  However, a plaintiff must establish that jurisdiction exists "by a preponderance of the evidence."  Id. (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

    B.  This Court has Subject-Matter Jurisdiction Over Marchena's Contract Claims

Pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), this Court has subject matter jurisdiction to hear claims against the Government "founded . . . upon any express or implied contract with the United States."  Where a plaintiff alleges that he entered into a contract with the Government, the plaintiff need only allege a "non-frivolous *allegation* of a contract with the government."  Mendez v. United States, 121 Fed. Cl. 370, 378 (2015) (quoting Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 2011)) (emphasis in original).  Therefore, a plaintiff merely must allege that "either an express or implied-in-fact contract underlies [his] claim."  Id. (quoting Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1352 (Fed. Cir. 1997)) (collecting additional cases).  Accordingly, to show jurisdiction, a plaintiff must plead the elements of a contract: "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority on the part of the government's representative to bind the government."  Biltmore Forest Broad. FM, Inc. v. United States, 555 F.3d 1375, 1380 (Fed. Cir. 2009) (citation omitted).

The Court finds that Marchena has met this low threshold requirement here.  He alleges that he and the Government expressly agreed (mutuality of intent, offer, and acceptance) that he would serve as an informant in return for help in recovering money from the Battle asset forfeiture (consideration).  Further, Marchena alleges that the agents with whom he interacted—Shanks and O'Bannon—had actual authority to bind the United States, and that AUSA Gonzalez also ratified the agreement and had authority to bind the United States.  At the jurisdictional stage, this is all that is required to show a "non-frivolous allegation of a contract with the government."  Mendez, 121 Fed. Cl. at 378 (citation omitted).  Whether Marchena has sufficiently alleged the elements of a contract such that his complaint states a claim upon which relief may be granted is a wholly separate issue.

Therefore, the Court finds that it has subject matter jurisdiction over Marchena's contract claims pursuant to 28 U.S.C. § 1491(a)(1), so these claims are not futile for lack of jurisdiction.

C. The Court Lacks Subject-Matter Jurisdiction Over Marchena's Protection Agreement Claims

In his Proposed Amended Complaint, Marchena adds allegations that the Government failed to offer protection to him and his family during the Battle investigation and trial as promised. See Prop. Am. Compl. ¶¶ 28, 44, 47, 54. However, agreements that are "entirely concerned with the conduct of parties in a criminal case, without a clear, unmistakable statement triggering monetary liability, do not invoke Tucker Act jurisdiction." Higbie v. United States, 778 F.3d 990, 993 (Fed Cir. 2015) (citing Sanders v. United States, 252 F.3d 1329 (Fed. Cir. 2001)). Witness protection agreements related to criminal cases fall into the same category. See Grundy v. United States, 2 Cl. Ct. 596, 597–98 (1983) (finding no jurisdiction where plaintiff alleged breach of a witness protection agreement).

In his Proposed Amended Complaint, Marchena alleges that the Government breached an agreement for protection that was related to a criminal case. Marchena does not allege any unmistakable statement in this agreement that would give rise to the Government's obligation to pay money. Therefore, the Court has no subject-matter jurisdiction under 28 U.S.C. § 1491(a)(1) to entertain Marchena's protection agreement claims, and those amendments to Marchena's complaint would be futile.

D. Marchena's Contract Claims are Not Time-Barred

The Government next argues that the statute of limitations has expired for Marchena's contract claims. The statute of limitations is a matter of jurisdiction, and plaintiffs must demonstrate the timeliness of their claims. Parkwood Associates Ltd. P'ship v. United States, 97 Fed. Cl. 809, 813 (2011). A claim before this Court is time-barred under the statute of limitations "unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. In a breach of contract action such as this one, "a claim accrues when the breach occurs." Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 481 (2013) (citing Holmes v. United States, 657 F.3d 1303, 1317 (Fed. Cir. 2011)). Still, a claim cannot accrue "unless the claimant knew or should have known that the claim existed." Mendez, 121 Fed. Cl. at 383 (citation omitted). Therefore, the Court must determine when Marchena knew or should have known his claim for compensation existed. Because Marchena filed his original complaint on January 13, 2016, he must have had notice that his claim existed no earlier than January 13, 2010.

Discussing the statute of limitations in this case necessarily involves turning to the factually related case of Mendez v. United States, 121 Fed. Cl. 370 (2015). That case involved the same investigation of José Miguel Battle, Sr. See id. at 373–74. The plaintiff, Mendez, also alleged that Shanks and O'Bannon entered into a contract with him according to which he would serve as an informant in exchange for help in recovering money from the Battle forfeiture. Id. at 374–76. The Government also argued in that case that Mendez's claims were barred by the statute of limitations. Id. at 384. After reviewing the record, the Court in Mendez provisionally found that the statute of limitations began to run on January 14, 2010, when the court entered the final order of forfeiture in the Battle case. Id. This was when Mendez "knew or should have known that his claim for compensation existed" because it was when Mendez's claim to the forfeited assets ripened. Id. (citation omitted). Still, the Court stressed that it could revisit the statute of limitations issue later if the evidence after discovery showed that Mendez was on notice of his claims at an earlier date outside the six-year statute of limitations. Id.

This Court sees no reason to depart from Mendez in determining when the statute of limitations began to run in this case. The Court in Mendez correctly reasoned that, absent evidence to the contrary, the earliest Mendez could have had notice of his claim was when the Battle forfeiture order was entered. Marchena's Proposed Amended Complaint alleges substantially the same details as to when Marchena was put on notice of his claims.[3] Therefore, as in Mendez, the Court provisionally finds that the statute of limitations in this case began to run on January 14, 2010. Marchena filed his complaint on January 13, 2016—one day before the statute of limitations expired. Therefore, the Court finds that Marchena's contract claims are timely, so his proposed amendments are not futile on that basis.

II.  Marchena's Proposed Amended Complaint Fails to State a Claim Upon Which Relief may be Granted

   A.  Standard of Review

The Government argues that the Proposed Amended Complaint fails to state a claim upon which relief may be granted because (1) Marchena does not sufficiently allege that a contract existed; and (2) Marchena does not sufficiently allege that officials with actual authority to bind the United States in contract ratified the agreement. See Reply at 3–8. Accordingly, the Court must evaluate the Government's arguments the same way it would

---

[3] Although the Government argued that Marchena's claims in his original complaint were time-barred, the parties do not seriously dispute the similarities (for statute of limitations purposes) between Mendez's claims and the claims in Marchena's Proposed Amended Complaint. The Government, in its Reply, notes that the Proposed Amended Complaint attempts to bring Marchena's claims "in line" with the Mendez statute of limitations, albeit in a "conclusory" fashion. See Reply at 9 n.4.

on a motion to dismiss for failure to state a claim under RCFC 12(b)(6). A complaint fails to state a claim upon which relief may be granted within the meaning of RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Briseno v. United States, 83 Fed. Cl. 630, 632 (2008) (citation omitted). The Court also must construe allegations in the complaint favorably to the plaintiff. See Extreme Coatings, Inc. v. United States, 109 Fed. Cl. 450, 453 (2013). Still, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted)). Further, a plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

### B. Marchena has not Alleged the Existence of a Contract with Officials who had Actual Authority to Bind the Government

Marchena alleges that he entered into an express contract with the Government or, in the alternative, a contract implied-in-fact. Prop. Am. Compl. ¶¶ 42–56. Therefore, to state a claim upon which relief may be granted, Marchena must sufficiently plead the elements of a contract with the United States, which are the same whether the alleged contract is express or implied-in-fact. Threshold Techs., Inc. v. United States, 117 Fed. Cl. 681, 696 (2014). As noted above, these elements are: "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority on the part of the government's representative to bind the government." Biltmore Forest, 555 F.3d at 1380 (citation omitted).

The main issue here is whether the Government agents with whom Marchena interacted had actual authority to bind the Government. Government agents must have actual authority to bind the Government in contract—they do not have apparent authority. See Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1344–45 (Fed. Cir. 2007). Private parties bear the risk that Government agents may not have actual authority to bind the Government, even when the agents themselves believe they have such authority. See Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (citing Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947)). An agent's actual authority to bind the Government may be either express or implied. Salles v. United States, 156 F.3d 1383, 1384 (Fed. Cir. 1998) (citation omitted). An agent has implied actual authority to contract if this authority is "an integral part of the duties assigned to [the G]overnment employee." Id. (citation omitted).

Marchena alleges that Shanks, O'Bannon, AUSA Gonzalez, and "their superiors and other Government Agents" all had actual authority and ratified Marchena's agreement with the Government. See Prop. Am. Compl. ¶¶ 16–19. This claim fails. First, pleading that certain officials had actual authority is a legal conclusion that this Court is not bound to accept as true. Second, Marchena's vague claims that "superiors and other Government

agents" ratified his agreement do not meet the plausibility standard articulated in Iqbal. See 556 U.S. at 679. The superiors' and agents' official roles are not named, so it is impossible to determine whether they had actual authority or not. Therefore, Marchena's claims as to these unnamed officials are not plausible.

Next, Shanks cannot have actual authority to bind the Government because he is a detective in the Metro-Dade Police Department. Prop. Am. Compl. ¶ 12. The Metro-Dade Police Department is under the jurisdiction of Florida, not the Federal Government. Marchena does not allege any special agreement between the Government and Shanks that would somehow give Shanks authority to bind the Federal Government—the closest allegation states that the Metro-Dade Police Department was one of several agencies involved in the Battle investigation. See Prop. Am. Compl. ¶ 5. Therefore, Shanks did not have actual authority to contract with Marchena on the Government's behalf.

O'Bannon and AUSA Gonzalez, though agents of the Government, also had no actual authority to bind the Government in contract. Marchena has not alleged that the Government gave O'Bannon or AUSA Gonzalez express authority to contract,[4] so any actual authority they had must have been implied—in other words, entering into contracts of this type must have been an integral part of the duties assigned to them. Salles, 156 F.3d at 1384.

Government agents generally have no implied actual authority to enter into contracts on the Government's behalf where the Government's performance is conditioned on the approval of another government official or body. For example, in SGS-92-X003 v. United States, the Court found that a DEA agent had not bound the Government where he had promised the plaintiff merely "to use his best efforts to obtain commissions . . . that would only be paid upon approval of high-level officials." 85 Fed. Cl. 678, 705 (2009). The plaintiff also "understood she was working for [the] DEA and that her rewards would be recommended by [the agent], but paid by the Government if approved and that there was no guarantee that [the agent]'s requests would be approved." Id. at 705.

The same is the case here. O'Bannon's and AUSA Gonzalez's promise to use "best efforts" to help Marchena does not translate into a firm promise by the Government because higher officials with actual authority needed to ratify the agreement. Indeed, Battle's assets were not yet forfeited when O'Bannon entered into his alleged agreement with Marchena, so it is difficult to determine what help O'Bannon—or even AUSA Gonzalez, in his supervisory role—was capable of promising on the Government's behalf.

---

[4] Though Marchena's Counsel stated at Oral Argument that AUSAs have the express actual authority to bind the Government in situations like this one, there are no allegations in the Proposed Amended Complaint that explain the basis for such authority, and Marchena also has not shown a source of authority in his briefing.

Logically speaking, the Government cannot promise to use best efforts to get Marchena an award pending Government approval of the award.  Therefore, O'Bannon and AUSA Gonzalez had no actual authority to contract on behalf of the Government.

Marchena has failed to plead in his Proposed Amended Complaint that a Government agent with actual authority entered into a contract with him.  Consequently, he has failed to plead that an express or implied-in-fact contract existed between him and the Government.  The Court therefore finds that his contract claims are futile because they fail to state a claim upon which relief may be granted within the meaning of RCFC 12(b)(6).[5]

III.    Conclusion

The Court finds that Marchena's claims in his Proposed Amended Complaint that are predicated upon the Government's promise to protect him are futile because they do not fall under the Court's subject-matter jurisdiction.  The Court further finds that Marchena's breach-of-contract claims in his Proposed Amended Complaint are futile because they fail to state a claim upon which relief may be granted.  Therefore, because all claims in the Proposed Amended Complaint would be futile, Plaintiff's motion to amend his complaint is DENIED.

Defendant's Motion to Dismiss

The Government has moved to dismiss Marchena's original complaint.  The Government's arguments in support of its motion to dismiss and its arguments in opposition to Marchena's motion to amend his complaint are substantially the same.  The only significant difference pertains to the claim for declaratory relief in Marchena's original complaint.  The Government argues that the Court lacks subject matter jurisdiction over this claim.  See Mot. at 18–19.

This Court has no jurisdiction to grant declaratory relief in the absence of a money judgment for the plaintiff.  Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992).  Here, a money judgment for Marchena would require a contract between Marchena and the Government, which does not exist.  Therefore, this Court has no subject-matter

---

[5] Because the Court finds that no contract existed between the parties, Marchena also has failed to allege that the Government breached any implied covenant of good faith and fair dealing, so this claim also is futile.  See Scott Timber Co. v. United States, 692 F.3d 1365, 1372 (Fed. Cir. 2012) ("[B]ecause the existence of the covenant of good faith and fair dealing depends on the existence of an underlying contractual relationship, there is no claim for a breach of this covenant where a valid contract has not yet been formed.") (citations omitted).

jurisdiction over Marchena's claim for declaratory judgment.  Accordingly, Defendant's motion to dismiss is GRANTED.

This action is hereby DISMISSED without prejudice.  The Clerk is directed to close this case.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge